IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW S.[1],

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No.: 6:25-cv-01022-AN

OPINION AND ORDER

Plaintiff Matthew S. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Social Security Income under the Social Security Act ("Act"). The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)). With that standard of review applied and for the reasons stated herein, Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Born in 1986, plaintiff alleges disability beginning November 30, 2021, due to "L4-L5 central to right subarticular disc protrusion, L4-L5 impinged right L5 nerve root, L4-L5 facet arthrosis and narrowing of thecal sac, Facet arthrosis bilaterally at L3-L4 through L5-S1, Depression, Anxiety, Panic attacks, Sleep deprivation, Drop foot/numb foot." Tr. 247, 239, 251. His claims were denied initially and upon reconsideration. On November 7, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 33-62. On

[1] In the interest of privacy, this Opinion and Order uses only the first name and initial of the last name of the non-governmental party.

May 8, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-26. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ's FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "lumbar degenerative disc disease, facet arthrosis; depression; and anxiety." Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because they did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except: "occasionally climb ladders, ropes, and scaffolds and occasionally crawl. The claimant can understand, remember, and carryout simple and routine instructions and can occasionally interact with coworkers and the public." Tr. 19-20.

At step four, the ALJ found plaintiff unable to perform any past relevant work. Tr. 24. At step five, the ALJ concluded plaintiff could perform jobs within the national economy despite his impairments such as assembler (small products I), assembler (small products II), and cleaner (housekeeper). Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly: (1) discounting his subjective symptom testimony; (2) discounting the lay witness testimony of plaintiff's significant other; and (3) assessing the medical opinion of Alana Vernon Hays, PT, DPT. Pl.'s Opening Br. 1, ECF 12.

### A. Subjective Symptom Testimony

Plaintiff contends the ALJ erred by discrediting his testimony concerning his limitations. Pl.'s Opening Br. at 2-14. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms

only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

At his hearing, plaintiff testified he was unable to work due to anxiety, panic, and back pain. Tr. 43. When asked where he experienced his pain, plaintiff testified "[m]y pain is from my lower right back all the way down to the tips of my toes on my right foot." Tr. 43. He explained standing and sitting were the most uncomfortable positions for him. *Id.* He reported he could sit or stand for twenty to thirty minutes before needing to change position. Tr. 44-45. Plaintiff stated he tried to help with household chores but could not do more than around four hours in a week. Tr. 45. He said one of the reasons he could no longer help as much as he used to was because reaching hurt his arms. Tr. 46. Plaintiff testified he regularly walked 4,500 steps and experienced some pain relief from walking. Tr. 48-49.

After summarizing plaintiff's testimony, the ALJ determined his medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. The ALJ cited plaintiff's "level of activity, conservative treatment, and often largely normal objective findings on examination" to support his conclusion. Tr. 22, 20-22.

**1. Daily Activities**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily

activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id*. at 1112-13 (noting a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Further, the "ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ discounted plaintiff's subjective symptom testimony because despite his allegations of back pain and inability to sit or stand for longer than thirty minutes, he could walk between one and two miles, ride his bicycle weekly, and work part-time as a gas station attendant. Tr. 22 (citing Tr. 542, 412). The ALJ also noted plaintiff moved to his parent's ranch and moved hay bales in late 2021 and walked 6,000 steps a day despite testifying at his hearing he could only walk 4,500 steps a day. Tr. 22 (citing Tr. 537, 704). Here, however, plaintiff's daily activities were not inconsistent with his testimony. Plaintiff stated, and the ALJ acknowledged, plaintiff could "only tolerate one activity daily." Tr. 22 (citing Tr. 542). The ALJ did not explain how plaintiff's ability to perform one of those activities per day undermined his testimony he was unable to maintain full-time work. Neither did the ALJ find that plaintiff spent a "substantial" portion of his day engaged in household chores or that those activities were transferrable to a work environment. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

Because the ALJ did not connect those activities to any symptom or the degree of any symptom alleged by plaintiff, that rationale was not a specific, clear, and convincing basis on which to discount plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

**2. Conservative Treatment**

An ALJ may discount a plaintiff's symptom testimony if the plaintiff had an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *Fair v. Bowen*,

885 F.2d 597, 603 (9th Cir.1989) "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *9. On the other hand, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see, e.g., Trevizo v. Berryhill*, 871 F.3d 664, 680-81 (9th Cir. 2017) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

Here, the ALJ relied on plaintiff's refusal to try new medications and lack of injections as evidence of "conservative treatment" despite acknowledging his treatment options were limited due to factors outside of plaintiff's control. Tr. 22, 21. After recognizing plaintiff treated his impairments with physical therapy and acupuncture, the ALJ noted plaintiff was "generally more resistant to pharmacological management of symptoms." Tr. 21. The ALJ concluded plaintiff's treatment was conservative because plaintiff did not go back on pain medications he already tried, was not willing to trial new pain medications, and did not receive injections for his pain. *Id.* (citing Tr. 573, 690). It was improper for the ALJ to frame plaintiff's refusal of medication as a personal choice when plaintiff's providers made the decision to taper off medication and plaintiff's adverse reactions to various medications were consistent throughout the record. Tr. 21; *compare* ("refusing as early as May 2022 to go back on pain medications" (Tr. 21 citing Tr. 573), "[c]oncern over side effects" (Tr. 21)) *with* ("patient states the lyrica was tapered off because provider thought risk was higher than benefit" (Tr. 573), "Avoid gabapentin, duloxetine, SSRIs given worsening depression and anxiety with past trials. Avoid NSAIDs given poor tolerance with worsened Gl issues with past trials" (Tr. 536), "He tried duloxetine and gabapentin, but had adverse reactions to both." (Tr. 583.)) Additionally, plaintiff was offered injection as treatment but "his insurance did not cover injection." (Tr. 583).

Because plaintiff's conservative pharmacological treatment was due to adverse reactions to several medications and an inaccessibility to insurance covered injections, it was not a valid reason for the ALJ to

discount his symptom testimony. *See Carmickle*, 533 F.3d at 1162 (holding a failure to take prescribed medications was not a valid reason to discredit testimony when plaintiff's physician indicated those medications caused "addiction potential or intolerable side effects."); *see also Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("[T]his court has held that no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment.") (citing *Orn*, 495 F.3d at 638). Thus, plaintiff's treatment history was not a clear and convincing reason to discount his testimony.

**3. Normal Objective Findings**

An ALJ may reject symptom testimony inconsistent with the medical evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") An ALJ may not, however, single out (cherry-pick) isolated examples of temporary well-being or relief from disabling symptoms to reject testimony as inconsistent with the medical record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014).

Here, the ALJ discounted plaintiff's testimony, in part, because the ALJ concluded plaintiff had "often largely normal objective findings on examination." Tr. 22. That conclusion was not supported by the ALJ's own analysis of the record. Tr. 20-22. When summarizing plaintiff's objective medical evidence, the ALJ reported plaintiff's MRI imaging revealed a "persistent moderate sized central protrusion with a smaller right subarticular component . . . in contact with the L5 nerve root. There was also persistent canal narrowing noted at L4-L5 related to the disc protrusion and facet arthrosis." Tr. 20-21 (citing 696). The ALJ continued their analysis by recounting plaintiff's "variable" objective findings such as frequent tenderness, positive straight leg raise test on the right leg, reduced sensation of the right leg, variable range of motion with occasional neck and back restrictions, variable "but generally normal/intact gait," and "generally full strength at examinations other than those performed in physical therapy." Tr. 21 (citing Tr. 384, 584, 639-40, 666, 694, 997).

The ALJ did not explain how those variable objective findings were "largely normal" or inconsistent with plaintiff's testimony. *See* (Tr. 20-22). Therefore, that rationale was not a clear and

convincing reason to discount plaintiff's symptom testimony. *Orteza*, 50 F.3d at 750. Regardless, inconsistency with the medical evidence alone is not a clear-and-convincing reason to reject symptom testimony. *Trevizo*, 871 F.3d at 679 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). Thus, even if the ALJ explained how plaintiff's variable objective findings were inconsistent with his symptom testimony, the ALJ would not have sufficiently provided a clear and convincing reason to reject plaintiff's testimony because, as explained above, the ALJ's alternative rationales were made in error.

At bottom, the ALJ erred to discount plaintiff's subjective symptom testimony because they did so without providing a clear and convincing reason supported by substantial evidence.

**B. Lay Witness Evidence**

Plaintiff contends the ALJ erred by failing to properly address his significant other's lay witness testimony by failing to provide reasons germane to the witness. Pl.'s Opening Br. at 18-19. The Commissioner responds by arguing the ALJ properly rejected the lay witness testimony because the ALJ properly rejected plaintiff's similar testimony. Def.'s Br. 10-11, ECF 15.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id.* (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id.* at 1118-19 (holding an ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Here, the Commissioner did not provide independent reasoning defending the ALJ's analysis of the lay witness testimony. *See* Def. Br. at 10-11. Because the ALJ did not properly discount plaintiff's subjective symptom testimony and the Commissioner did not provide an independent rationale defending the ALJ's analysis of the lay witness testimony the Commissioner conceded the ALJ did not properly evaluate the lay witness testimony. *See Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or.

2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted); *see also Johnny T. v. Berryhill*, No. 6:18-CV-00829- AA, 2019 WL 2866841, at *2-3 (D. Or. July 2, 2019) ("[T]he Commissioner's failure to substantively respond to [the p]laintiff's arguments regarding his symptom testimony, medical opinion evidence, and lay witness testimony constitutes a concession of those issues. . . ."); *Krista B. v. Comm'r, Soc. Sec. Admin*., No. 3:20-CV-01822-HL, 2021 WL 5235969, at *3-4 (D. Or. Nov. 10, 2021).

Accordingly, because the Commissioner solely relied on the ALJ's improper assessment of plaintiff's symptom testimony to defend the ALJ's assessment of the lay witness testimony, the ALJ erred in evaluating the lay witness testimony.

**C. Medical Opinion Evidence**

Next, plaintiff argues the ALJ erred by improperly evaluating Alana Vernon, PT, DPT,'s medical opinion. Pl.'s Opening Br. at 14-17. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. Because the ALJ sufficiently considered the supportability and consistency of Ms. Vernon's medical opinion and supported their conclusion with substantial evidence the ALJ did not err in discounting Ms. Vernon's opinion.

**1. Alana Vernon, PT, DPT**

On November 13, 2023, Ms. Vernon completed a medical source statement opining on plaintiff's

limitations and abilities in a hypothetical work environment. Tr. 1005-08. Ms. Vernon stated she treated plaintiff with physical therapy for several weeks in 2019 and again in 2023. Tr. 1005. She diagnosed plaintiff with chronic right side lumbar radiculopathy. *Id.* Ms. Vernon opined depression, anxiety, emotional factors, and psychological factors affected plaintiff's physical condition. *Id.* She opined plaintiff could sit for fifteen minutes, walk for thirty minutes, and stand for one hour before needing to rest or alternate position during a regular eight-hour workday. *Id.* She reported plaintiff could reach in any direction for a maximum of thirty minutes during an eight-hour workday. Tr. 1006. Ms. Vernon stated plaintiff would need to take more than ten unscheduled breaks during the workday due to pain, arthralgia, and fatigue, and the breaks would be at least ten minutes long. *Id.* Ms. Vernon opined plaintiff's impairments would interfere with his attention and concentration causing him to be off task for twenty-five percent of the time or more during a regular workday. Tr. 1007. She opined plaintiff's limitations existed as described in her opinion beginning on April 1, 2021. Tr. 1008.

The ALJ found Ms. Vernon's opinion not persuasive because her opinion was not supported or consistent with the record. Tr. 23-24.

Regarding supportability, the ALJ found Ms. Ms. Vernon's opinion not supported. Tr. 23. The ALJ noted that Ms. Vernon based her opinion in part on psychological factors despite never conducting mental status exams with plaintiff. Tr. 23 (citing Tr. 697-853). In her statement, Ms. Vernon did not explain how or why psychological and emotional factors contributed to the severity of plaintiff's symptoms. *See* Tr. 1005. As the ALJ explained, Ms. Vernon's treatment notes indicate "the claimant was seen for chronic lower back pain to improve lumbar flexion range of motion, abdominal strength, and right lower extremity strength. There is nothing in the records related to mental status, other than some subjective reports that are occasionally repeated." Tr. 23. Accordingly, the ALJ concluded Ms. Vernon's opinion was unsupported.

Regarding consistency, the ALJ found Ms. Vernon's opinion "markedly inconsistent with the record as a whole." Tr. 24. The ALJ highlighted how—inconsistent with Ms. Vernon's limitation plaintiff could only sit fifteen minutes, reach thirty minutes, walk thirty minutes, and stand one hour during a regular eight-hour workday—plaintiff could walk two miles, bike three miles, move hay bales, and continue to

work for months after she opined his limitations began. Tr. 24 (citing Tr. 537, 542). Thus, the ALJ found Ms. Vernon's opinion inconsistent with the record. Tr. 24. Because the ALJ applied the proper legal standards and supported their decision with substantial evidence, the ALJ did not err in finding Ms. Vernon's opinion not persuasive. *See Trevizo*, 871 F.3d at 674-75 (citing *Orn*, 495 F.3d at 630) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.")

**D. Remedy**

Plaintiff asserts this case should be remanded for future proceedings. Pl.'s Opening Br. at 20; Pl.'s Reply Br. 17, ECF 16. This Court agrees. That is because the ALJ erred in evaluating plaintiff's subjective symptom testimony and his significant other's lay witness testimony, and those errors may have affected the remaining steps, including plaintiff's RFC. The errors here are not "inconsequential to the ultimate nondisability determination." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Outstanding issues must therefore be resolved before a determination of disability can be made. *See Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (noting remand for further proceedings is appropriate when consideration of the record casts serious doubt as to claimant's disability as defined by the Social Security Act); *see also Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings).

On remand, the ALJ will reevaluate plaintiff's subjective symptom testimony and the lay witness testimony. As warranted, the ALJ will reevaluate plaintiff's RFC, obtain any supplemental vocational expert evidence, and conduct any other reasonable measures necessary. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

//

//

//

//

//

## CONCLUSION

For the reasons set forth in this opinion, the court REVERSES the Commissioner's final decision and REMANDS this case for further administrative proceedings.

IT IS SO ORDERED.

DATED this 17th day of September, 2026.

Adrienne Nelson
United States District Judge